In the Matter of the Complaint of STE-UART TRANSPORTATION COMPANY, Owner of the Tank Barge STC–101, for Exoneration from or Limitation of Liability.

Civ. A. No. 76–697–N

United States District Court,
E. D. Virginia,
Norfolk Division.

Feb. 28, 1980.

Stephen Wainger, Seawell, McCoy, Dalton, Hughes, Gore & Timms, Norfolk, Va., for petitioner.

Timothy G. Hayes, Asst. Atty. Gen. of Va., Richmond, Va., for Commonwealth of Virginia.

Michael A. Rhine, Asst. U. S. Atty., Norfolk, Va., Allen Van Emmerik, Torts Branch, U. S. Dept. of Justice, Washington, D. C., for Federal Government.

## ORDER

CLARKE, District Judge.

■ This matter is before the Court on the motion for summary judgment filed by Steuart Transportation Company (hereinafter referred to as "Steuart").[1] The Commonwealth of Virginia (hereinafter "the Commonwealth") and the Federal Government have each filed claims for damage to migratory waterfowl, statutory penalties, and cleanup costs against Steuart, all arising from an oil spill in the Chesapeake Bay on February 2, 1976. Approximately 30,000 migratory birds allegedly were destroyed as a result of the oil spill. The sole issue to be determined on this motion for summary judgment is whether the Commonwealth and/or the Federal Government have a right to sue for the loss of migratory waterfowl.

Steuart contends that neither government can maintain the action because they do not "own" the birds. Essentially, Steuart argues that to recover money damages for the loss of property one must establish an ownership interest, and that the Supreme Court of the United States, over the years, has concluded that neither the state nor the Federal Government has an ownership interest in migratory waterfowl. The seminal case is *Missouri v. Holland*, 252 U.S. 416, 40 S.Ct. 382, 64 L.Ed. 641 (1920), in which Justice Holmes, writing for the Court, rejected the State of Missouri's attack on the Migratory Bird Treaty Act. The State contended that the Act interfered with the State's control over wild animals within its boundaries.

The Commonwealth and the United States, on the other hand, maintain that their right to recover for the loss of migratory waterfowl does not depend upon ownership, as Steuart contends, but upon the sovereign right to protect the public interest in preserving wildlife resources. This sovereign right derives from two theories: (1) the public trust doctrine, and/or (2) the doctrine of *parens patriae*.

This Court agrees with Steuart's position that the State of Virginia does not "own" the migratory waterfowl in question. The authority in support of this position is clear and voluminous. *See, e.g., Baldwin v. Fish and Game Commission of Montana*, 436 U.S. 371, 98 S.Ct. 1852, 56 L.Ed.2d 354 (1978); *Douglas v. Seacoast Products, Inc.*, 431 U.S. 265, 97 S.Ct. 1740, 52 L.Ed.2d 304 (1977); *Toomer v. Witsell*, 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948); *Missouri v. Holland*, 252 U.S. 416, 40 S.Ct. 382, 64 L.Ed. 641 (1920). However, many of the cases refuting a state's claim to ownership of resources turned upon principles of federalism and pre-emption by federal legislation of state control measures. Neither of these princi-

---

1. The Court notes that this motion for summary judgment on this issue as to whether claimants are entitled to recover at all for the waterfowl is not timely. This case originally was filed in 1976 and has been litigated both in this

Court and in the Fourth Circuit Court of Appeals. The "threshold" issue raised by this motion certainly should have been raised in the earlier proceedings in this case.

ples is applicable to the current issue before this Court.

██ Rather, the State of Virginia and the United States do not seek recovery for the value of the waterfowl based upon a claimed ownership interest. These governments seek recovery under either, or both, the public trust doctrine and the doctrine of *parens patriae*. This Court is of the opinion that both of these doctrines are viable and support the State and the Federal claims for the waterfowl.

██ Under the public trust doctrine, the State of Virginia and the United States have the right and the duty to protect and preserve the public's interest in natural wildlife resources. Such right does not derive from ownership of the resources but from a duty owing to the people. *See, e.g., Toomer v. Witsell*, 334 U.S. 385, 408, 68 S.Ct. 1156, 1168, 92 L.Ed. 1460 (1948) (upholding state's right "to conserve or utilize its resources on behalf of its own citizens"). Likewise, under the doctrine of *parens patriae*, the state acts to protect a quasi-sovereign interest where no individual cause of action would lie. *See, e.g., Hawaii v. Standard Oil Co.*, 301 F.Supp. 982 (D. Hawaii 1969), *rev'd on other grounds*, 431 F.2d 1282 (9th Cir. 1970), *aff'd*, 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972). In the case currently before this Court, no individual citizen could seek recovery for the waterfowl, and the state certainly has a sovereign interest in preserving wildlife resources.

Accordingly, the Court DENIES Steuart's motion for summary judgment.